1  GARRY G. MATHIASON, Bar No. 51119
   ALAN S. LEVINS, Bar No. 57612
2  DEBORAH A. RICE, Bar No. 207100
   LITTLER MENDELSON
3  A Professional Corporation
   650 California Street, 20th Floor
4  San Francisco, CA 94108
   Telephone: 415.433.1940
5  Fax: 415.434.2302

6  Attorneys for Plaintiff
   GRANITE ROCK COMPANY

**ORIGINAL FILED**

JUL 2 2 2004

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| GRANITE ROCK COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>INTERNATIONAL BROTHERHOOD OF TEAMSTERS, FREIGHT, CONSTRUCTION, GENERAL DRIVERS, WAREHOUSEMEN AND HELPERS, LOCAL 287 (AFL-CIO), and DOES 1 through 20, inclusive,<br><br>Defendants. | Case No. C 04 2767 JW<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S APPLICATION FOR TEMPORARY RESTRAINING ORDER** |

# TABLE OF CONTENTS

|   |   |   | PAGE |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | THE FACTUAL BACKGROUND | | 1 |
| | A. | Overview Of Dispute | 1 |
| III. | LEGAL ARGUMENT | | 4 |
| | A. | The Court Has Jurisdiction Pursuant To Section 301(a) Of the Labor Management Relations Act | 4 |
| | B. | The Parties Reached Oral Agreement On All of the Terms and Conditions Of The Collective Bargaining Agreement | 4 |
| | C. | This Court Has Jurisdiction To Enjoin Defendant's Unlawful Conduct | 5 |
| | D. | This Court Should Enjoin The Defendant's Unlawful Strike | 6 |
| | | 1. The Agreement Between The Parties Is Currently in Effect | 6 |
| | | 2. The Dispute Between The Parties Is Subject To Arbitration | 7 |
| | |    a. Disputes Regarding Discipline and/or Amnesty Concerning Striking Employees Is An Arbitrable Issue | 7 |
| | | 3. Defendant Has Engaged In A Strike And Work Stoppage In Violation Of Its Obligation Not To Strike | 9 |
| | |    a. Arbitration Would Not Be A Futile Effort | 9 |
| | | 4. The Requirements For Preliminary Injunctive Relief Are Satisfied Here | 9 |
| | |    a. Granite Rock Will Suffer Irreparable Injury If Defendant's Strike Is Allowed To Continue | 10 |
| | |    b. Granite Rock Stands To Suffer Tremendous Harm If The Injunction Is Not Granted, Whereas Defendant Stands To Suffer No Harm If The Injunction Is Granted | 11 |
| IV. | CONCLUSION | | 12 |

TABLE OF AUTHORITIES

PAGE

**CASES**

*Aluminum Workers Int'l v. Consolidated Aluminum Corp.*,
  696 F.2d 437 (6th Cir. 1982) .................................................................................. 9

*Alvares v. Erickson*,
  514 F.2d 156 (9th Cir.), *cert denied*, 423 U.S. 874 (1975) ........................................ 4

*Amalgamated Transit Union, Division 1384 v. Greyhound Lines, Inc.*,
  529 F.2d 1073 (9th Cir. 1976),
  *vacated on other grounds*, 429 U.S. 807 (1976) ...................................................... 9

*Boys Markets, Inc. v. Retail Clerk's Union, Local 770*,
  398 U.S. 235, 90 S. Ct. 1583 (1970) ............................................................... 5, 6, 9

*California Trucking Ass'n v. Brotherhood of Teamsters & Auto Truck Drivers, Local 70*,
  679 F.2d 1275 (9th Cir. 1982) .................................................................................. 6

*Cedar Coal Co. v. Mine Workers Local*,
  560 F.2d 1153 (4th Cir. 1977) ................................................................................. 8

*Complete Auto Transit, Inc. v. Danny Reis, et al.*,
  614 F.2d 1110 (6th Cir. 1980) .............................................................................. 7, 8

*Hotel & Restaurant Employees and Bartenders Union, Local 703 v. Williams*,
  752 F.2d 1476 (9th Cir. 1985) .................................................................................. 4

*Local 174, Teamsters, Chauffeurs, Warehousemen & Helpers of America v. Lucas Flour Co.*,
  369 U.S. 95, 82 S. Ct. 571 (1962) ............................................................................. 6

*Oil, Chemical & Atomic Workers Int'l v. Amoco Oil*,
  885 F.2d 697 (10th Cir. 1989) .................................................................................. 9

*Seattle Times Co. v. Seattle Mailer's Union No. 32*,
  664 F.2d 1366 (9th Cir. 1982) .................................................................................. 6

*Warehousemen's Union Local 206 v. Continental Can Co.*,
  821 F.2d 1348 (9th Cir. 1987) .............................................................................. 4, 5


**STATUTES**

29 U.S.C. § 104 .................................................................................................................. 5

29 U.S.C. § 107 ................................................................................................................ 10

29 U.S.C. § 185 .................................................................................................................. 5

## I. INTRODUCTION

Granite Rock Company (referred to as "Plaintiff" or "Granite Rock") submits this memorandum in support of its Application for Temporary Restraining Order to enjoin an unlawful strike and work stoppage by Defendant International Brotherhood Of Teamsters, Freight, Construction, General Drivers, Warehousemen And Helpers, Local 287 (referred to as "Defendant Local 287" or "Union"). All the conditions for an injunction have been met: (1) there is a collective bargaining agreement in effect between the parties; (2) the strike concerns a dispute that is subject to arbitration under the parties' agreement; (3) the strike is in breach of a no-strike obligation contained in the parties' agreement; and (4) injunctive relief is warranted under ordinary principles of equity.

## II. THE FACTUAL BACKGROUND

### A. Overview Of Dispute.

Granite Rock, a California corporation headquartered in Watsonville, California, supplies ready mix concrete for commercial uses primarily in Northern California. (See Declaration of Bruce Woolpert ("Woolpert Decl.") at ¶ 2. In the past twelve months, Granite Rock has purchased more than $50,000 worth of goods and supplies directly from points located outside the State of California. *Id.* Thus, Granite Rock is an "employer" as that term is defined in the Labor Management Relations Act of 1947, as amended.

At all relevant times, Plaintiff and Defendant have been parties to a collective bargaining agreement that sets forth the terms and conditions of employment for employees engaged as drivers at Plaintiff's Berryessa Plant in San Jose, California. The parties' previous collective bargaining agreement expired by its terms on April 30, 2004. (Woolpert Decl. at ¶ 3, Exhibit A.)

In March 2004, Plaintiff and Defendant Local 287 commenced negotiations on a new agreement. Thereafter, the parties continued negotiations over the course of the next three months. (Woolpert Decl. at ¶ 4.) In early June 2004, after the expiration of the former collective bargaining agreement, the bargaining unit employees at the San Jose facility went out on strike. (Woolpert Decl. at ¶ 5.) On the evening of Thursday, July 1, 2004, Plaintiff and Defendant Local 287 met for negotiations that continued through the night.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
Twentieth Floor
San Francisco, CA 94108.2693
415.433.1940

MPA ISO PLAINTIFF'S APPLICATION FOR
TEMPORARY RESTRAINING ORDER

1.

Case No. C 04 2767 JW

At approximately 4:00 a.m. on Friday, July 2, 2004, the parties reached complete agreement on terms for a new four-year collective bargaining agreement ("Agreement") covering the term of May 1, 2004 through April 30, 2008. (Woolpert Decl. at ¶ 6.) The Company then presented the Union with its Last, Best and Final Offer ("Final Offer"). (Woolpert Decl. at ¶ 6, Exhibit B.) The Final Offer codified only the terms that the parties agreed to over the course of negotiations that differed from the terms of the Expired Agreement. (Woolpert Decl. at ¶ 7-8.) The provisions of the Expired Agreement to which the parties did not propose change were not addressed in the Final Offer, but rather became de facto provisions of the new Agreement. *Id.* In other words, the Final Offer and the Expired Agreement, taken together, set forth the terms and condition of the new Agreement reached by the parties on July 2, 2004. *Id.*

At the conclusion of the meeting on July 2, 2004, George Netto, Business Representative of Teamsters Local 287, stated that the agreed upon new contract would be presented to his members for a ratification vote by 9:00 a.m. that day (July 2, 2004). (Woolpert Decl. at ¶ 9.) Netto then said that a "Back to Work Agreement" could be discussed after the Agreement was ratified.[1] (Woolpert Decl. at ¶ 10.) Netto's suggestion was consistent with the parties' past practice of discussing the terms of a back to work agreement after the new collective bargaining agreement was ratified. *Id.*

As Netto stated, at about 9:00 a.m. on Friday, July 2, 2004 a ratification meeting was held. The Agreement was presented orally to the Granite Rock Company employees and the Agreement was ratified. That same day, several unit employees who were previously on strike contacted Plaintiff to in order to schedule a date and time when they could return to work. (Woolpert Decl. at ¶ 11.) They stated that the Agreement had been approved. *Id.*

---

[1] A Back to Work Agreement does not involve contract provisions or terms. Instead it refers to how the parties are going to handle certain outstanding issues that arose out of the strike such as employee sabotage and pending grievances. If no agreement is ever reached on such items then the parties will process all pending disputes related to strike activity under the grievance mechanism of the collective bargaining agreement. On July 2, 2004, the Granite Rock employees were supposed to return to work because of the new Agreement that had been ratified earlier that day, not because of the Back to Work Agreement.

During the afternoon of July 2, 2004, Netto informed Plaintiff that the Agreement had been ratified by the unit employees. (Woolpert Decl. at ¶ 13.) Netto further confirmed that the Agreement had been ratified when he said, "Now that we've got things behind us on a new four-year contract, let's meet to finalize a Back to Work Agreement. It would be okay with me if we got it done next week like Wednesday or Thursday." (Woolpert Decl. at ¶ 13.) During subsequent conversations regarding the Back to Work Agreement, the parties agreed that any such agreement would be subject to the grievance procedure set forth in the new Agreement. (Woolpert Decl. at ¶ 17.)

On July 5, 2004, despite reaching agreement on the new Agreement, Defendant Local 287 called union members at their homes and ordered them <u>not</u> to return to work. (Woolpert Decl. at ¶ 14.) The next day (Tuesday, July 6, 2004), Defendant Local 287 informed Plaintiff that its members would <u>not</u> return to work unless Plaintiff executed a Back to Work Agreement that guaranteed amnesty for the Local 287 employees and for employees at Plaintiff's <u>other facilities</u> covered by different collective bargaining agreements with <u>different</u> unions in three counties. (Woolpert Decl. at ¶ 15.) Defendant Local 287 has continuously rejected Plaintiff's requests that the Union execute the Agreement agreed to by the parties and ratified by the unit employees. (Woolpert Decl. at ¶ 18, Exhibit C.)

To date, Local 287 members remain engaged in this unlawful strike in clear violation of the Agreement. Additionally, Plaintiff's employees covered under the separate collective bargaining agreements will not cross the Teamsters' picket lines set up at their facilities. The Employer has filed grievances against these Unions under the terms set forth in their respective collective bargaining agreements. Plaintiff has also filed unfair labor practice charges against Defendant Local 287 with Region 32 of the National Labor Relations Board, who is currently investigating Plaintiff's charges.

The parties' Agreement contains a detailed grievance and arbitration procedure. Specifically, the grievance procedure provides for final and binding arbitration of <u>any</u> dispute arising from the application of the Agreement. (Woolpert Decl. at ¶ 3, Exhibit A, Section 20) Plaintiff is willing to participate in the grievance and arbitration procedures set forth in the Agreement.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
Twentieth Floor
San Francisco, CA 94108.2693
415.433.1940

MPA ISO PLAINTIFF'S APPLICATION FOR TEMPORARY RESTRAINING ORDER

3.

Case No. C 04 2767 JW

## III. LEGAL ARGUMENT

### A. The Court Has Jurisdiction Pursuant To Section 301(a) Of the Labor Management Relations Act.

The Ninth Circuit has interpreted section 301(a) to include three jurisdictional requisites: (1) a contract; (2) a claim of violation of that contract; (3) an issue either "between" an employer and labor organization or "between" labor organizations. *Alvares v. Erickson*, 514 F.2d 156, 161 (9th Cir.), *cert denied,* 423 U.S. 874 (1975). The Complaint meets these jurisdictional requisites. The Court's jurisdiction is not preempted by the primary jurisdiction of the National Labor Relations Board ("NLRB"). It is well established that when a labor dispute involves a breach of contract and an unfair labor practice charge, the NLRB and the courts have concurrent jurisdiction. *Hotel & Restaurant Employees and Bartenders Union, Local 703 v. Williams*, 752 F.2d 1476, 1478 (9th Cir. 1985).

### B. The Parties Reached Oral Agreement On All of the Terms and Conditions Of The Collective Bargaining Agreement.

On July 2, 2004, the Parties orally agreed to all the terms of the present Collective Bargaining Agreement. Specifically, the parties agreed to maintain the same contract language set forth in the 1999-2004 agreement, except as modified by Plaintiff's Final Offer, which embodies all of the changes agreed to by the parties throughout negotiations for a successor agreement. (Woolpert Decl. at ¶ 6-8, Exhibits A and B.) This includes a no-strike provision and grievance and arbitration procedure. This Agreement was then ratified by the unit employees on July 2, 2004.

It is a well established labor law doctrine that oral agreements can be enforced as valid collective bargaining agreements. The key issue is whether the parties agreed on the substantive terms and conditions of the contract. *Warehousemen's Union Local 206 v. Continental Can Co.*, 821 F.2d 1348 (9th Cir. 1987).

> The company's final offer, and the union's acceptance by ratification of the membership, bear all the outward indicia of a valid contract. Union acceptance of an employer's final offer is all that is necessary to create a contract, regardless of whether either party later refuses to sign a written draft.

*Warehousemen's Union Local 206 v. Continental Can Co.*, 821 F.2d at 1350.

It is undisputed that during the July 2, 2004 meeting, the Parties reached agreement on all terms and conditions of the new Agreement. (Woolpert Decl. ¶ 6-8) Netto stated that he would present the contract to his members for ratification that <u>same</u> morning. (Woolpert Decl. ¶ 9.) At or about 9:00 a.m. July 2, 2004, the new Agreement was presented to the unit employees for a ratification vote. That same day, several employees contacted Plaintiff about returning back to work. They stated that the new Agreement had been approved. (Woolpert Decl. ¶ 11.) From the time of the conclusion of the July 2, 2004 negotiations, the Union's conduct demonstrated a meeting of the minds on the new Agreement. In fact, Netto contacted Bruce Woolpert and informed him that the contract was ratified. (Woolpert Decl. ¶ 13.) Additionally, the Union removed pickets from Granite Rock facilities. (Woolpert Decl. ¶ 9.) Thus, the words and the conduct of the Union provide overwhelming evidence that the parties reached a meeting of the minds as of July 2, 2004, and that the Agreement was subsequently ratified. As demonstrated above, the parties' oral agreement and ratification constitutes a valid collective bargaining agreement.

Despite multiple requests by Plaintiff, Defendant Local 287 has unequivocally refused to reduce to writing the final agreement of the parties unless Plaintiff agrees to a Back to Work Agreement guaranteeing amnesty to Local 287 employees and employees from sister unions. (Woolpert Decl. at ¶ 18, Exhibit C.) However, the Back to Work Agreement is not part of the underlying collective bargaining agreement and has absolutely no effect on the validity of the Agreement or any of its provisions.

C.   **This Court Has Jurisdiction To Enjoin Defendant's Unlawful Conduct.**

In *Boys Markets, Inc. v. Retail Clerk's Union, Local 770*, 398 U.S. 235, 90 S. Ct. 1583 (1970), the United States Supreme Court held that a federal district court is empowered under Section 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a), to enjoin a strike which has occurred over a dispute that is subject to the arbitration clause of a collective bargaining agreement. The Court specifically held that the Norris-LaGuardia Act, 29 U.S.C. § 104, does not bar such relief:

> [T]he central purpose of the Norris-LaGuardia Act to foster the growth and viability of labor organizations is hardly retarded--if anything this goal is advanced--by a remedial device that merely enforces the obligation that the union freely undertook a specifically enforceable agreement to submit disputes to arbitration.

398 U.S. at 252-53.

Prior to the Court's decision in *Boys Markets*, in *Local 174, Teamsters, Chauffeurs, Warehousemen & Helpers of America v. Lucas Flour Co.*, 369 U.S. 95, 82 S. Ct. 571 (1962), the United States Supreme Court held that where a dispute is arbitrable under a collective bargaining agreement, a union has obligated itself not to strike over that dispute. 369 U.S. at 104-06. In *Lucas Flour*, the employer filed suit against the union for damages sustained as a result of a strike that it claimed violated the parties' collective bargaining agreement. The union argued that there could be no violation of the contract because, although the contract provided for final and binding arbitration, it did not contain an express no-strike clause <u>explicitly</u> covering the underlying dispute. The Court held that a union's strike to settle a dispute covered by a compulsory arbitration provision constitutes a violation of the agreement. *Id.* at 106. The Ninth Circuit is in accord. *See, e.g., California Trucking Ass'n v. Brotherhood of Teamsters & Auto Truck Drivers, Local 70*, 679 F.2d 1275, 1285-86 (9th Cir. 1982); *Seattle Times Co. v. Seattle Mailer's Union No. 32*, 664 F.2d 1366, 1368-69 (9th Cir. 1982).

### D. This Court Should Enjoin The Defendant's Unlawful Strike.

Under *Boys Markets* and its progeny, a court may issue an injunction against a strike whenever the following conditions are met: (1) there is a collective bargaining agreement in effect between the parties; (2) the strike concerns a dispute that is subject to arbitration under the parties' agreement; (3) the strike is in breach of a no-strike obligation contained in the parties' agreement; and (4) injunctive relief is warranted under ordinary principles of equity. *Boys Markets*, 398 U.S. at 253-55.

#### 1. The Agreement Between The Parties Is Currently in Effect.

The Agreement entered into between Granite Rock and Defendant Local 287 was reached by the parties on July 2, 2004 and is in effect from May 1, 2004 to April 30, 2008.

(Woolpert Decl. ¶ 6.) As discussed above, the fact that the Agreement has yet to be signed has absolutely no bearing on the validity of the Agreement.

### 2. The Dispute Between The Parties Is Subject To Arbitration.

This dispute arises out of Defendant Local 287's demand for the Plaintiff to forgo disciplining bargaining unit employees who participated in the work stoppage following the expiration of the former collective bargaining agreement. Defendant Local 287 is additionally demanding "amnesty" for Plaintiff's employees represented by sister unions who refused to cross Defendant Local 287's picket line. The current work stoppage is intended to compel Plaintiff's concession on the amnesty issue for Defendant Local 287's employees and its sister unions.

#### a. Disputes Regarding Discipline and/or Amnesty Concerning Striking Employees Is An Arbitrable Issue.

The "Discharge/Suspension" language of the Agreement provides, in pertinent part, "no employee shall be discharged or suspended without just cause." (Woolpert Decl. at ¶ 3, Exhibit A, Section 19.)[2] The broad grievance/arbitration provision provides that "[a]ll disputes arising under this agreement shall be resolved in accordance with the following procedure." (Woolpert Decl. at ¶ 3, Exhibit A, Section 20.) . Whether or not Plaintiff imposes discipline, including suspension or discharge, on striking employees is an arbitrable issue. If such discipline is imposed, employees <u>must</u> submit themselves to the grievance procedure, including arbitration. *See Complete Auto Transit, Inc. v. Danny Reis, et al.*, 614 F.2d 1110, 1111-12 (6th Cir. 1980).

In *Complete Auto Transit, supra*, a case factually similar to this one, employees initially engaged in a work stoppage arising from an intra-union dispute between the union and union members which was not arbitrable and therefore not enjoinable. Though this dispute was soon resolved, the work stoppage continued over the union's demand for amnesty for the striking employees. Specifically, the union offered to enter into an agreement with the employer by which the striking employees would return to work in exchange for assurances that no discipline or

---

[2] Once again, the terms of the Expired Agreement, including the grievance and arbitration provisions set forth in Sections 19 and 20, became part of the new Agreement agreed to by the parties on July 2, 2004, by the very fact that the parties did not propose to modify those sections in the Final Offer.

MPA ISO PLAINTIFF'S APPLICATION FOR TEMPORARY RESTRAINING ORDER     7.     Case No. C 04 2767 JW

penalties would be imposed upon them, in other words, a demand for amnesty for the strikers. The court held that this issue (amnesty) involved an <u>arbitrable</u> dispute between the employer and employees and that the continuation of the work stoppage violated the no-strike clause of the collective-bargaining agreement. Accordingly, the court enjoined the employees from striking and directed them to the grievance procedures in the agreement, including arbitration, should any discipline be imposed. *Complete Auto Transit, Inc.*, 614 F.2d at 1111-12. Following this reasoning, Defendant Local 287's demand for amnesty for striking employees is clearly an arbitrable issue and may be enjoined.

To the extent that Defendant Local 287 is demanding amnesty for employees of sister unions, this is also an arbitrable issue. In *Cedar Coal Co. v. Mine Workers Local*, 560 F.2d 1153 (4th Cir. 1977), the defendant union struck the employer to force the employer to concede on an arbitrable matter involving its sister union. The court correctly held that because the purpose of the Local 1766 work stoppage was to coerce the employer into conceding an arbitrable to its sister union the strike should be enjoined. The strike was enjoinable because the union sought to eviscerate the arbitration language of its sister union and avoid litigating the arbitrable issues. *See Cedar Coal*, 560 F.2d at 1171-72. Thus, whether the defendant union was contractually bound to arbitrate the issue was not the determinative. By its actions, Local 1766 had, in effect, made the arbitrable issue cause of its sister union "its own." *See id.* at 1172. The Court wisely saw that the union could not evade its own no-strike clause by claiming its dispute was not subject to arbitration when it was striking to affect the outcome of an arbitrable issue affecting its sister union. Clearly, discipline could be arbitrated under its sister union's collective bargaining agreement. Such an execution to *Boys Market* would clearly be the exception that completely swallows the rule.

Here, Defendant Local 287 is engaged in a work stoppage to compel a concession on an arbitrable issues between Plaintiff and other unions under circumstances that would increase Defendant Local 287's chances of obtaining the same benefits (amnesty). This court cannot permit such a blatant attempt at an end-run around the arbitration procedure.

### 3. Defendant Has Engaged In A Strike And Work Stoppage In Violation Of Its Obligation Not To Strike.

Defendant, and its members, reconvened its strike on the evening of Tuesday, July 6, 2004. (*See* Woolpert Decl. at ¶ 16.) Defendant's strike is expressly prohibited by the inherent no-strike obligation contained in the parties' current collective bargaining agreement.

#### a. Arbitration Would Not Be A Futile Effort.

Granite Rock need not show that there is a probability of success on the merits to obtain a *Boys Markets* injunction. *See Amalgamated Transit Union, Division 1384 v. Greyhound Lines, Inc.*, 529 F.2d 1073, 1077-78 (9th Cir. 1976), *vacated on other grounds*, 429 U.S. 807 (1976). Other circuits are in accord. *See, e.g., Oil, Chemical & Atomic Workers Int'l v. Amoco Oil*, 885 F.2d 697, 703-04 (10th Cir. 1989), *quoting Amalgamated Transit, supra; Aluminum Workers Int'l v. Consolidated Aluminum Corp.*, 696 F.2d 437, 442 n.2 (6th Cir. 1982).

The issue of whether striking employees may be subject to discipline involves the classic arbitrable task of interpreting contract language and the parties' application of that language to a particular set of facts. Clearly arbitration of this dispute would "not be futile" under the grievance/arbitration procedure as the arbitrator's decision "shall be final and binding." (Complaint at Exh. A, set forth in the previous Agreement at Page 19).

### 4. The Requirements For Preliminary Injunctive Relief Are Satisfied Here.

On July 9, 2004, Plaintiff filed a Complaint for damages as a result of the illegal work stoppage in Northern District, San Jose Division. At the time the Complaint was filed, the dispute was limited and Plaintiff anticipated a quick resolution. However, over the past 12 days the scope of the dispute has expanded from 21 employees at Plaintiff's San Jose facility to over 170 employees at several facilities. There is no hope for an imminent resolution. Accordingly, a damage action cannot provide adequate relief because of the expanded nature of the dispute. Further, Judge Ware cannot hear Plaintiff's Application for Temporary Restraining Order until August 16, 2004. Therefore, Plaintiff seeks immediate relief from the Court to avoid further irreparable harm.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
Twentieth Floor
San Francisco, CA 94108.2693
415.433.1940

MPA ISO PLAINTIFF'S APPLICATION FOR
TEMPORARY RESTRAINING ORDER

9.

Case No. C 04 2767 JW

### a. Granite Rock Will Suffer Irreparable Injury If Defendant's Strike Is Allowed To Continue.

A natural consequence of the strike is the shutdown of Granite Rock's operations and inability to provide ready mix concrete to keep its current customers. Granite Rock, its customers, and the public, have already suffered irreparable injury caused by the illegal work stoppage, especially during this week as the dispute has been expanded. In addition to the monetary losses Granite Rock has suffered and will continue to suffer, Granite Rock will suffer other losses that cannot be remedied by damages. Unless Defendant Local 287 is immediately restrained from continuing its unlawful strike action, Granite Rock will continue to sustain great and irreparable injury and damage.

Granite Rock's business is one that is extremely competitive and, therefore, requires reliability and continuity of service on a daily basis. Any disruption of such service will cause irreparable injury to Granite Rock's ability to maintain its market share.

If Plaintiff is unable to provide concrete to complete projects that have already commenced, its customers must obtain it from Plaintiff's competitors. The nature of such purchases makes it unlikely that customers will return. Further, as a result of the strike, key Santa Clara Valley Transportation Authority construction projects have been delayed including roadway improvements scheduled to begin Tuesday, July 13, 2004. (Woolpert Decl. at ¶ 23.) This not only is causing irreparable harm to Granite Rock, but poses safety concerns for Santa Clara County. (Woolpert Decl. at ¶ 23.) A prolonged inability to provide concrete will likely cause a devastating loss of these construction projects, which are the lifeblood of Plaintiff's business.

While Section 7 of the Norris-La Guardia Act ("NLA") 29 U.S.C. § 107, contains certain anti-injunction provisions, as the U.S. Supreme Court explained in its *Boys Market* decision, 398 U.S. at 250, those provisions must be harmonized with the later and acted provisions of Section 301 of the LMRA. Here, the facts show that Local 287 and its officials and members have committed and are continuing to commit unlawful acts in violation of the Agreement and the grievance/arbitration machinery found in the Agreement. The facts further show that substantial and

irreparable to Granite Rock and its members will follow if injunctive relief is not issued. Finally, Granite Rock has no adequate remedy at law.

Injunctive relief is required to restore to Granite Rock the benefit of the contractual protections to which it and Local 287 agreed, and to protect and conserve the public interest in contractual arbitration procedures against the kind of unilateral action engaged in by Local 287 here, which negates the very notion of industrial peace and, therefore, causes substantial and irreparable injury to Granite Rock and its customers, as well as the public.

In addition to the Declarations submitted in support of this Motion for Temporary Restraining Order, Granite Rock is prepared to present the testimony of witnesses in open court (and subject to cross-examination) who will substantiate the facts as set forth herein and in such Declarations. Further, Granite Rock is prepared to provide the findings of fact in support of the instant motion. (Woolpert Decl. at ¶ 21-23.)

    **b. Granite Rock Stands To Suffer Tremendous Harm If The Injunction Is Not Granted, Whereas Defendant Stands To Suffer No Harm If The Injunction Is Granted.**

As discussed above, Granite Rock will suffer substantial irreparable harm if this injunction is not granted and Defendant's work stoppage in breach of its no strike obligation is permitted to continue. There is no comparable harm that Defendant can possibly suffer. If discipline is imposed on any striking employee, Defendant may utilize the grievance and arbitration procedure provided in the Agreement. Any individual subject to discipline can be adequately compensated through reinstatement and backpay. Accordingly, Defendant and its members will suffer no harm if an injunction is granted. Should employees return to work and later it is determined that they have a right to strike, they can do so having benefited from being paid during the time they are working.

## IV. CONCLUSION

For all the reasons discussed above, Granite Rock respectfully requests that this Court enter a Temporary Restraining Order prohibiting Defendant Local 287 from engaging in its unlawful strike and set a date for a hearing for a preliminary injunction.

Dated: July 22, 2004

*/s/ Deborah Rice*

DEBORAH A. RICE
LITTLER MENDELSON
A Professional Corporation

Attorneys for Plaintiff
GRANITE ROCK COMPANY

San_Francisco:31166731.1 001511.1075